RAWLS, Judge
(dissenting).
In my opinion, the argument made by Mr. Barron, lead counsel for defendants, transgressed the permissible limits of legitimate advocacy, and to imprint this Court’s stamp of approval upon same will constitute a disservice to the bar and bench and encourage a trial by ordeal, combat, or argument rather than by seeking the illusive angel of justice.
As stated to the jury by Mr. Barron, the overriding issue in this case was clear and concise, i. e., “ * * * [W]ho was on the wrong side of the road?” thereby causing the accident. Intoxication of plaintiff was of some evidentiary value. However, plaintiff was not being tried for drunk driving, as one might reasonably imply by the argument of defendants’ counsel. Of twenty-two pages of argument made by Mr. Barron, the following excerpts reflect his focus .upon intoxication of plaintiff:
(Tr 10) “That’s what he wanted to do on the fourth of July was to get drunk * * * he was out drinking on the road all day * * * Joe Bill Galloway, a sixteen year old boy, driving, the driver of the truck, was he drinking, was there any evidence that he was drinking, * * * he was out drunk on the fourth of July.”
(Tr 11) “Do you want to meet a dead drunk man on the road? What causes most deaths on the highway, on the road ? * * * A sixteen year old boy apparently — apparently they sent him out for some bread and a drunk runs over him on the road, * * * Here is a sixteen year old boy with a mirror shattered, he pulls off the road and he was scared to death, he just saw a drunk run into him, * * * ’>
(Tr 12) “You can’t find for the plaintiff, because it just — because justice won’t let you do it, you can’t find for them, because if you do that, you would he standing here today doing something that your conscience won’t let you do. You would be saying to a drunk man that you can go out and get drunk, stay away from home all day long, get in a car and run someone off the road.”
(Tr 13) “ * * * a drunk man won’t eat, * *
(Tr 17) “You know that when a drunk comes toward you, * * * He said, ‘That the drunk man went on over the hill and didn’t indicate that he was going to stop.’ ”
(Tr 18 & 19) “What would you think the truck would smell like from a bunch of drunks that had been in it all day? The patrolman said it smelt like a brewery * * * I’m sorry. Gentlemen, you know what alcohol smells like, it smells like alcohol. The patrolman is not going *154 to lie about that. Now, Mr. McNeal saw that half pint in there, the patrolman didn’t see it in there. You know what happened, somebody come along, saw the poor old man hurt and threw that half pint across the fence, * * * .”
(Tr 20) “ * * * you can take this affidavit, we have been drunk all day long, * * * »
(Tr 21) “Gentlemen, the Court will charge you that to this effect, the Judge will say Gentlemen of the jury, if you believe that Lonnie Clayton Clark drank-ed any whiskey that day and you believe that his drinking whiskey contributed in any way to this wreck, contributed to this wreck, then you’ve got to find for the defendant.”
(Tr 22) “I’ll tell you this, I hate to go over this again, Judge. If he was drinking — that if he was drinking and it approximately contributed to the wreck, approximately means that he got part drunk to the extent that he wasn’t paying any attention to what he was doing and ran across the road * * * all he had to do was to go straight and not turn as a drunk man would do. Anyway, the Judge is going to tell you that alcohol contributed to the wreck, you cannot find for the plaintiff.”
Of course, it was fair for Mr. Barron to comment upon the evidence bearing upon the intoxication of plaintiff but to drive the nail of drunkenness through the timber of trial as was done in this summation was, in my opinion, so inflammatory as to leave the jury with one vital question in mind: “Was the plaintiff drunk ? ” and in Mr. Barron’s words “ * † * the Judge will say Gentlemen of the jury, if you believe that Lonnie Clayton Clark dranked any whiskey that day and you believe that his drinking whiskey contributed in any way to this wreck, contributed to this wreck, then you’ve got to find for the defendant.” Apparently, counsel at this point had forgotten the issue he so clearly pinpointed upon opening. The argument was so disproportionate to the issue, it is my view that it transcended the bounds of fairness and made intoxication the feature instead of an evidentiary factor.
That portion of Mr. Barron’s argument going to the poverty and patriotism of defendants, to say the least, did not contribute to a fair trial. Such statements as “ * * * the Plaintiff’s attorney has asked you to take sixty thousand dollars, according to him, out of the home and the pockets of these two defendants” and “The young fellow said I don’t remember a lot of that stuff, it’s been four years ago, I’ve had a lot on my mind, being going through training, he’s in the air born infantry, a very important job, they wanted you to stick him with a sixty thousand dollar judgment.” “Mrs. Galloway testified * * * they had seven children, one of them in Viet Nam or Spain.” “If you can take that testimony that they put on the stand and take this young man here and his father and say that you were going to take the funds and property away from this man and seven children and this man and his young wife, that would be wrong, that would be terribly wrong.”
Judge Carroll speaking for this Court in Pensacola Transit Co. v. Denton, 119 So.2d 296, 298 (Fla.App.1st, 1960), cogently set out the rule of law applicable to the argument here reviewed, viz.:
“Under any court system it is difficult to attain a true and just result even under the most favorable conditions because of the frailty of man and his subjectivity to various prejudices and other influences that may warp his judgment in attempting to attain the ultimate truth in a given factual situation. The injection by either party to a cause, whether deliberate or inadvertent, of any such improper influence in a jury trial is a distinct disservice to the administration of justices, and lawyers, as officers of the courts, and the courts, on their own motion if need be, must be ever vigilant to see that no such influence creeps into the *155 proceedings in even the slightest degree and subverts the noble purpose of our court system to provide ‘justice under law.’
“ * * * No one on earth can tell with certainty the full effect of that influence upon a juror’s mind.”
I dissent.